John P. Aldrich (Nevada Bar No. 6877)
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel.: (702) 853-5490
Fax: (702) 227-1975

Jeffrey C. Block (*pro hac vice* forthcoming)
Jacob A. Walker (*pro hac vice* forthcoming)
Stephen J. Teti (*pro hac vice* forthcoming)
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| GARY SMITH AND PAMELA DUVALL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAYSIGN, INC.; MARK NEWCOMER; and MARK ATTINGER,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Gary Smith and Pamela Duvall ("Plaintiffs"), by and through their attorneys, allege upon personal knowledge as to their own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through their attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Paysign, Inc. ("Paysign" or the "Company") common stock between March 12, 2019 and March 31, 2020, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. Paysign is a publicly traded company that provides prepaid card programs and processing services under the Paysign brand to corporations, government agencies, universities, and other organizations. The Company changed its name from 3PEA International Inc. to Paysign, Inc. on April 23, 2019

3. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants failed to disclose to investors that: (1) Paysign's internal controls over financial reporting were not effective; (2) Paysign's information technology ("IT") general controls were not effective; and (3) as a result of the foregoing, Defendants' public statements were materially false and misleading at all relevant times.

4. On March 16, 2020, during pre-market hours, Paysign announced that it would be unable to file its annual financial report with the SEC in a timely fashion because of an ongoing audit, advising investors that "management identified material weaknesses related to (i) assessment of internal controls over financial reporting and (ii) [IT] general controls."

5. On this news, Paysign's stock price fell $0.93 per share, or 16.85%, to close at $4.59 per share on March 16, 2020.

6. Then, after the markets closed on March 31, 2020, Paysign announced that it was again delaying the release of its 2019 financial results.

7. On this news, the stock fell from its March 31, 2020 close of $5.17 per share to a close of $4.35 per share on April 1, 2020, or a drop of approximately 16%.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

13. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14. Plaintiff Gary Smith acquired shares of Paysign common stock at artificially inflated prices as set forth in his attached certification, and has been damaged.

15. Plaintiff Pamela Duvall acquired shares of Paysign common stock at artificially inflated prices as set forth in her attached certification, and has been damaged.

16. Plaintiffs Smith and Duvall are married.

17. Defendant Paysign, Inc. is incorporated under the laws of Nevada, with its principal place of business at 1700 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89012. Its common stock trades on the Nasdaq stock exchange under the symbol PAYS.

18. Defendant Mark Newcomer is and was at all relevant times Paysign's Chief Executive Officer.

19. Defendant Mark Attinger is and was at all relevant times Paysign's Chief Financial Officer.

20. Defendants Newcomer and Attinger (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and the investing public, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material, non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading. The Individual Defendants are therefore liable for the misstatements and omissions plead herein.

4

## SUBSTANTIVE ALLEGATIONS

21. Paysign provides prepaid card programs and processing services under the Paysign brand to corporations, government agencies, universities, and other organizations. The Company offers various services, including transaction processing, cardholder enrollment, value loading, cardholder account management, reporting, and customer service through Paysign, a proprietary card-processing platform. It also develops prepaid card products for healthcare reimbursement payments, pharmaceutical assistance, donor compensation, corporate and incentive rewards, and expense reimbursement cards; and payroll or general purpose reloadable cards, as well as gift or incentive cards. In addition, the Company offers Buy and Bill programs for patients to purchase directly from physician's office or through an infusion center for physician administered therapies; payment solution for source plasma collection centers; and Paysign Premier, a demand deposit account debit card, as well as customer service center and Paysign Communications Suite services. Its principal target markets for processing services comprise prepaid card issuers, retail and private-label issuers, small third-party processors, and small and mid-size financial institutions in the United States and internationally.

22. Paysign's customers include healthcare companies, major pharmaceutical companies and source plasma providers, large multinationals, prestigious universities, and social media companies.

## MATERIALLY FALSE MISSTATEMENTS AND OMISSIONS

23. On March 12, 2019, the start of the Class Period, in pre-market hours, Paysign filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K"). The 2018 10-K provided, in relevant part:

> Our chief executive officer and chief financial officer evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d15(e) under the Securities Exchange Act of 1934) as of December 31, 2018.

> *Based on that evaluation, our chief executive officer and chief financial officer concluded that, as of the evaluation date, such controls and procedures were effective.*
>
> * * *
>
> As of December 31, 2018 we conducted an evaluation, under the supervision and with the participation of our chief executive officer (our principal executive officer), our chief operating officer and our chief financial officer (also our principal financial and accounting officer) of the effectiveness of our internal control over financial reporting based on criteria established in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission, or the COSO Framework. Management's assessment included an evaluation of the design of our internal control over financial reporting and testing of the operational effectiveness of those controls. A material weakness is defined within the Public Company Accounting Oversight Board's Auditing Standard No. 5 as a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis. ***Based upon this assessment, management concluded that our internal control over financial reporting was effective as of December 31, 2018.***

(Emphasis added.)

24.   The Individual Defendants signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), which were appended to the 2018 10-K as exhibits. These certifications attested that "[t]he information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.   On May 8, 2019, Paysign filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2019 (the "1Q 19 10-Q"), which provided, in relevant part:

> Our chief executive officer and chief financial officer are responsible for establishing and maintaining our disclosure controls and procedures. Disclosure controls and procedures means controls and other procedures that are designed to ensure that information we are required to disclose in the reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and to ensure that information required to be disclosed by us in those reports is accumulated and communicated to the our management, including our principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions

> regarding required disclosure. Our chief executive officer and chief financial officer evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of March 31, 2019. ***Based on that evaluation, our chief executive officer and chief financial officer have concluded that, as of the evaluation date, such controls and procedures were effective.***

(Emphasis added.)

26. The Individual Defendants signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), which were appended to the 1Q 19 10-Q as exhibits. These certifications attested that "[t]he information contained in the [1Q 19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27. On August 7, 2019, Paysign filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2019 (the "2Q 19 10-Q"), which provided, in relevant part:

> Our chief executive officer and chief financial officer are responsible for establishing and maintaining our disclosure controls and procedures. Disclosure controls and procedures means controls and other procedures that are designed to ensure that information we are required to disclose in the reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and to ensure that information required to be disclosed by us in those reports is accumulated and communicated to the our management, including our principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure. Our chief executive officer and chief financial officer evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of June 30, 2019. ***Based on that evaluation, our chief executive officer and chief financial officer have concluded that, as of the evaluation date, such controls and procedures were effective.***

(Emphasis added.)

28. The Individual Defendants signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), which were appended to the 2Q 19 10-Q as exhibits. These certifications attested that "[t]he information contained in the [2Q 19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

7

29. On November 6, 2019, Paysign filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2019 (the "3Q 19 10-Q"), which provided, in relevant part:

> Our chief executive officer and chief financial officer are responsible for establishing and maintaining our disclosure controls and procedures. Disclosure controls and procedures means controls and other procedures that are designed to ensure that information we are required to disclose in the reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and to ensure that information required to be disclosed by us in those reports is accumulated and communicated to the our management, including our principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure. Our chief executive officer and chief financial officer evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of September 30, 2019. ***Based on that evaluation, our chief executive officer and chief financial officer have concluded that, as of the evaluation date, such controls and procedures were effective.***

(Emphasis added.)

30. The Individual Defendants signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), which were appended to the 3Q 19 10-Q as exhibits. These certifications attested that "[t]he information contained in the [3Q 19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

31. The statements in paragraphs 23-30 were materially false and misleading and omitted to disclose material information. Specifically, Defendants made false and/or misleading statements, and/or failed to disclose to investors that: (1) Paysign's internal controls over financial reporting were not effective; (2) Paysign's IT general controls were not effective; and (3) as a result of the foregoing, Defendants' statements and disclosures were materially false and misleading at all relevant times.

8

32. Defendants knew, or in reckless disregard for the truth should have known, that at the time the statements in paragraphs 23-30 were made that: (1) Paysign's internal controls over financial reporting were not effective; (2) Paysign's IT general controls were not effective.

## THE TRUTH BEGINS TO EMERGE

33. On March 16, 2020, during pre-market hours, Paysign announced that it would be unable to file its annual financial report with the SEC in a timely fashion because of an ongoing audit, advising investors that "management identified material weaknesses related to (i) assessment of internal controls over financial reporting and (ii) [IT] general controls."

34. On this news, Paysign's stock price fell $0.93 per share, or 16.85%, to close at $4.59 per share on March 16, 2020.

35. Then, after the markets closed on March 31, 2020, Paysign announced that it was again delaying the release of its 2019 financial results.

36. On this news, the stock fell from its March 31, 2020 close of $5.17 per share to a close of $4.35 per share on April 1, 2020, or a drop of approximately 16%.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Paysign's securities, Plaintiffs and other members of the Class have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Paysign common stock between March 12, 2019 to March 31, 2020, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

39. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

40. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a. Whether the Exchange Act was violated by Defendants;

    b. Whether Defendants omitted and/or misrepresented material facts;

    c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e. Whether the price of the Company's stock was artificially inflated; and

    f. The extent of damage sustained by Class members and the appropriate measure of damages.

41. Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct alleged herein.

42. Plaintiffs will adequately protect the interests of the Class and have retained counsel who are experienced in class action securities litigation. Plaintiffs have no interests that conflict with those of the Class.

43. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

44. Plaintiffs will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b. The omissions and misrepresentations were material;

    c. The Company's common stock traded in efficient markets;

    d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

    e. Plaintiffs and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts.

45. At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiffs and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

46. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

11

47. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## SCIENTER ALLEGATIONS

48. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Paysign, their control over, and/or receipt and/or modification of Paysign's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Paysign, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

49. On March 16, 2020, during pre-market hours, Paysign announced that it would be unable to file its annual financial report with the SEC in a timely fashion because of an ongoing audit, advising investors that "management identified material weaknesses related to (i) assessment of internal controls over financial reporting and (ii) [IT] general controls."

50. On this news, Paysign's stock price fell $0.93 per share, or 16.85%, to close at $4.59 per share on March 16, 2020.

51. Then, after the markets closed on March 31, 2020, Paysign announced that it was again delaying the release of its 2019 financial results.

52. On this news, the stock fell from its March 31, 2020 close of $5.17 per share to a close of $4.35 per share on April 1, 2020, or a drop of approximately 16%.

## CAUSES OF ACTION

### COUNT ONE
### Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

53. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

54. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose the material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

55. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

56. Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiffs and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

### COUNT TWO
### Violations of § 20(a) of the Exchange Act
### (Against the Individual Defendants)

57. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

13

58.     The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above which contained statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiffs as class representatives pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiffs' counsel as Lead Counsel;

b) awarding compensatory and punitive damages in favor of Plaintiffs and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post- judgment interest thereon;

c) awarding Plaintiffs and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d) awarding Plaintiffs and the other Class members such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury in this action of all issues so triable.

Dated: April 2, 2020                  Respectfully submitted,

By: /s/ *John P. Aldrich*
John P. Aldrich (Nevada Bar No. 6877)
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel.: (702) 853-5490
Fax: (702) 227-1975

*Local Counsel*

Jeffrey C. Block (*pro hac vice* forthcoming)
Jacob A. Walker (*pro hac vice* forthcoming)
Stephen J. Teti (*pro hac vice* forthcoming)
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020

*Counsel for Plaintiffs*